IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC

2006 DEC 19  A 11: 40

| | |
|---|---|
| John Francis Dykeman, Jr., ) | C. A. No. 2:06-1905-GRA-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Beaufort County Detention ) | |
| Center, Phillip A. Foot ) | |
| Director, Southern Health ) | |
| Partners, Inc., A. Campbell ) | |
| Administrator (BCDC), ) | |
| ) | |
| Defendants. ) | |

This civil rights action under 42 U.S.C. § 1983[1] brought by a pretrial detainee proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motions for summary judgment. 28 U.S.C. § 636(b).

The plaintiff, John Francis Dykeman, Jr., brought this action on June 28, 2006, and alleged that he received inadequate

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

medical care and that his grievances were not handled properly. He named as defendants the Beaufort County Detention Center[2] (BCDC), Phillip A. Foot Director of BCDC[3], Southern Health Partners, Inc., and A. Campbell[4] Administrator.

On September 18, 2006, Southern Health Partners, Inc., and J. DuBose, filed a motion for summary judgment. On September 20, 2006, Dykeman was provided a copy of the defendants' motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On October 13, 2006, Dykeman filed an opposition to the motion. On October 25, 2006, BCDC and Phillip A. Foot filed a motion for summary judgment and Dykeman was provided another Roseboro order to which he responded on November 29, 2006. Hence, it appears consideration of the motions is appropriate.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met.

---

[2] The BCDC is a building not a "person" within the meaning of 28 U.S.C. §1983 so that it is not subject to suit at all.

[3] Likewise, Foot in his official capacity as the Director of the BCDC is not a "person" within the meaning of 28 U.S.C. §1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

[4] J. DuBose has been substituted for A. Campbell by the plaintiff.

2

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is

not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

### MEDICAL CARE VIOLATIVE OF THE CONSTITUTION

When a plaintiff in a § 1983 action is a pretrial detainee like Dykeman, his claim is governed by the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). Still, as a practical matter, standards to be applied to a due process claim concerning medical care tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates, Hill v. Nicodemus, 979 F.2d 987, 991-992 (4th Cir. 1992), and are therefore relied upon here.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime. See, U.S. Const. Amend. VIII. Accordingly, a prisoner makes out a claim under the Eighth Amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

4

These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

Likewise, constitutionally, the state is not required to furnish prisoners the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The constitution also does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is

insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, *supra*. Negligence simply is not actionable under 42 U.S.C. § 1983. Daniels v. Williams, 474 U.S. 327 (1986).

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the prisoner must show that he was deprived of an objectively serious human need. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

Farmer v. Brennan, 511 U.S. 825 (1994), and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate.

See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison officials must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

Lastly, supervisory personnel like defendant Foot are entitled to rely on the expertise of prison doctors in treating medical conditions, and are not deliberately indifferent in failing to intervene in treatment. Miltier v. Bourne, 896 F.2d 848, 854-55 (4th Cir. 1990).

## FACTS

The facts for purposes of the defendants' motions, either undisputed or taken in the light most favorable to the plaintiff

7

as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record are as follow.

The factual representations in Dykeman's verified complaint, are evidence in the case, <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979). To that end the complaint is set forth here:

> After complaining to medical for more than 18 months to no avail I started verbally complaining to the pod officers and administrative staff at (BCDC). I've since started complaining with the complaint forms provided by (BCDC). I have 3 complaint forms that have not been answered to date and also filed 2 grievence forms that are also also answered to date. I've been repeatedly told I'll look into it. In the past 20 months I still haven't received any relief nor do I see any in the near future. I'm filing suit against Beaufort County Detention Center for failure to uphold their own policies and proceedures. In short they have failed in guaranteeing the proper health care for those who have been placed in their care. Also their disregard for there on policies and proceedures to insure that everyone in their care are properly cared for and that the administration should answer requests, complaints, and grievences in a timely manner.
>
> Prior to 06/23/04 1 fell comming out of the shower at Beaufort County Detention Center(BCDC). I was sent to medical here at BCDC. I was given motrin and sent back to the pod. On 06/23/04 I was sent to Beaufort Memorial Hospital for x-rays on my lower back. Beaufort Memorial read the x-rays and sent the prognosis back to BCDC. It was determined that I have degenerative disc disease. I was given motrin for several months I informed medical that the motrin was not doing any good, after the motrin I was given robacine for several months I made another request to medical to have the robacine changed due to inability to ease the pain. I was given napperson for several months and that helped some what. Again the napperson finally was not helping. Iwas informed that medical could not give me any more pain medications. Medical

8

> never advised me in writing that long periods of
> use of the previos pain medications would or could
> cause other damage to my kidneys and liver, I did
> not receive anything in writing until 02/27/06.
>
> On 09/06/04 I was given a special
> instructions regarding inmate under medical care
> or treatment form that stated"I/m need to have a
> different mattress due to degenerative disc
> disease to alleviate some of the pain he
> experiencing". As of this date I still don't have
> a supportive mattress. On 02/27/06 I received
> written notification that medical would have no
> problem in putting me back on some of the pain
> medication that is known to cause other adverse
> side effects. Medical nor the detention center has
> bothered to check the mattress that I'm sleeping
> on they continue to claim that its a supportive
> mattress.
>
> I've written to the attorney general and was
> told that I needed to write the SC. Department of
> Corrections.  I have complide with those
> instructions and have not received any responce
> back from them either.
>
> I'm asking that Beaufort County Detention Center
> as well as Southern Health Partners Inc. Be held
> accountable for their lack of responcibility in
> providing adequate health care and the ability to
> make sure that the inmates being seen by said
> health care provider are being given the best care
> available within reason. I'm asking that both
> Beaufort County Detention Center and Southern
> Health Partners Inc. be charged with medical
> neglect, cruel and unusual punishment, undue pain
> and suffering. I'm asking that both parties be
> punished to the fullest extent of the law and that
> I be awarded the maximum settlement that their
> combined liability policies provide.

(sic).

   Dykeman also filed a sworn affidavit in which he affied that the medical treatment he has been provided "is apparently not doing any good" because he still has back pain.  Aff. p. 2.  He

9

stated that "Plaintiff has had several opinions concerning his back however the record does not show a second or third opinion by a trained professional. Defendant Charles A. Bush, M.D. is a general practitioner and the Nurses are Licensed practical nurses giving their opinion in a field they do not specialize in." Id. Dykeman complains in his affidavit that "if patients don't agree with Defendants treatment, then they must suffer with or without Defendants treatment." Aff. p. 3.

The record also contains the affidavits of defendant Dr. Bush, nurse DeBose, and all of the plaintiff's medical records. These submissions indicate that Dykeman was seen the same day that he fell and was sent on the same day to the hospital for x-rays. A definitive diagnosis of degenerative disc disease was made and he was treated with the appropriate medication. Further, each time that Plaintiff made a medical complaint he was evaluated and prescribed treatment that was medically appropriate. Bush never disregarded or ignored a medical complaint. In Dr. Bush's medical opinion the medical care was appropriate. Lastly Dr. Bush believes that at no time did he violate any constitutional rights of the plaintiff of which he is aware.

## DISCUSSION

A review of the record and relevant case law reveals that the defendants' motions should be granted and this matter ended.

First, it appears that Dykeman is complaining of no more than negligence and not delicts which rise to the level of a constitutional violation.  Neither negligence nor malpractice violate the Eighth or Fourteenth Amendments.  Dykeman received a plethora of medical care, he was seen by Dr. Bush and nurses repeatedly; he was given medications, and those medications were changed as needed.

As to Plaintiff's complaint that he was not given a supportive mattress, the medical records reflect that he was given two different mattresses on occasion, but that actual orthopedic mattresses are not provided to any of the detainees.  In addition, Plaintiff complained of his diet, and, at his request, his diet was changed in accordance with his request.

Here, Dykeman apparently believes that he is entitled to treatment that will leave him pain-free.  He wants second and third opinions from doctors who are specialists.  He disagrees with the BCDC's medical personnel as to appropriate treatment and wants the "best" health care.  However, as noted, the state is not required to furnish prisoners the best of care, only reasonable care.  Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977).  The constitution also does not guarantee a prisoner the treatment of his choice.  Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988).  The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is

11

involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In short, Dykeman has not alleged or demonstrated either Estelle element essential to his claim; he has not shown deliberate indifference to a serious medical need. As a result, Dykeman's medical complaint is subject to summary judgment.

Additionally, to the extent that Dykeman complains that the BCDC defendants failed to follow their own policies or state law in their handling of his grievances, he has not stated a constitutional claim. First, the purpose of § 1983 is to provide a mechanism for the vindication of rights guaranteed under federal law, not state law or prison policies. Lewis v. Casey, 518 U.S. 343 (1996). Second, there is no federal right to participate in a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

In sum, Dykeman, as the party opposing summary judgment, has failed to point to facts evidencing a genuine material issue for trial. Fed.R.Civ.P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted.

Lastly, § 804 of the PLRA, amended § 1915(g), and reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated

> or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The instant action is wholly meritless and should be considered frivolous and malicious within the meaning of the Prison Litigation Reform Act and counted as a "strike" against Dykeman thereunder. 28 U.S.C. §1915A.

## CONCLUSION

Accordingly, for the aforementioned reason, it is recommended that the defendants' motions for summary judgment be granted, that all other motions be deemed moot, and that this action be deemed a "strike" against Dykeman under 28 U.S.C. § 1915A.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
December 18, 2006

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

14